## Case No. 7,715.

### KENT v. ROBERTS.

[2 Story, 591.] [1]

Circuit Court, D. Maine. Oct. Term, 1843.

ATTACHMENT — LEVY BY SHERIFF OUTSIDE HIS COUNTY—AUTHORITY TO REVIEW DECISION OF STATE COURT—CREDITORS—PRIORITY.

1. In a suit brought by A. an attachment was made of lands lying in Penobscot county; but before execution issued, the portion of this county, containing the said lands, was set off, as Aroostook county. The execution was directed to the sheriff of Penobscot county and was levied by his deputy, who was also a deputy of the sheriff of Aroostook county. In a suit, brought by B. an attachment on the same lands was made subsequent to the attachment by A., but execution was levied under the second suit and attachment before the county was set off. The present is a writ of entry brought by the demandant, who claims through A. against the tenant, who claims through B. It was *held*, that the levy of B. was not to be postponed to that of A.; that the deputy of the sheriff of Penobscot county had no authority to levy the execution of A. on lands without his county; and that, although the levy was made by a deputy of Aroostook county. yet, since it was not directed to the proper officer, and not made by the deputy in behalf of such officer, it was utterly void.

2. An application was made to the supreme court of Maine to allow the execution to be amended by inserting a direction to the sheriff of Aroostook county, on the ground, that the clerk had accidentally omitted it, which application the court refused to grant; and it was *held*, that this court had no authority to review or overrule the decision by the state court, it being in respect of a matter solely of local law.

3. At the common law, if a sheriff seize goods on execution, and go out of office before the sale thereof is completed, he may proceed to sell them.

[Cited in Hayford v. Everett, 68 Me. 507.]

4. It seems, that where an attachment is made by a sheriff, who resigns his office before execution issues, he is not the proper officer to levy it.

5. Upon general principles. a sheriff can only levy upon such real estate as is within his county.

6. The rule, applicable to a purchaser claiming land, with notice of a prior unrecorded attachment, does not govern the case of two creditors, proceeding by suit, in invitum, with a knowledge of the attachments of each other. In the latter case, each is entitled to any priority which he can, through his diligence, lawfully obtain over the other.

Writ of entry for lands situated in Aroostook county, in the state of Maine. The case came before the court upon an agreed statement of facts by the parties, which was as follows: "Both parties claim under one Robert M. N. Smyth. The demandant [William V. Kent] claims the premises by virtue of an extent, made in September, 1838, of an execution in favor of one James N. Cooper, and against said Smyth. and of said Cooper's deed to him, the demandant, dated Feb. 17th, 1842. The tenant [Amos M. Roberts] claims by virtue of an extent, made in December, 1839, of an execution in favor of one John H. Pilsbury, and against said Smyth, and of said Pilsbury's deed to him, the tenant, dated December 3d, 1841. Pilsbury, claiming the demanded premises as his own, had given a written permit, or license, to cut timber thereon, under which license persons were cutting, with the knowledge, but against the consent of the said Cooper, prior to and at the time of the executing of each of said deeds of Cooper and of Pilsbury. Both Pilsbury and Cooper had acquired liens on the demanded premises by attachments on their original writs, which they severally sought

[1] [Reported by William W. Story, Esq.]

to perfect by their said extents. Pilsbury's attachment was the earlier, and Cooper was aware of that fact when he directed his levy to be made, and appeared and defended in Pilsbury's suit, in the character of a subsequent attaching creditor. Cooper, also, had been informed, that Pilsbury had executed his deed to the tenant, before he himself executed his to the demandant. When the attachments on mesne process and Cooper's levy were made, the premises were situated in the county of Penobscot; but before Pilsbury's execution was issued, viz. on the first day of May, 1839, the new county of Aroostook had been formed, so as to embrace the premises within its boundaries. Pilsbury's execution contained printed directions to the sheriff of each county in the state, by name, except Aroostook. For several years prior to the issuing of this execution, the executions issuing out of the clerk's office for the county of Penobscot were, in their printed parts, directed to the several sheriffs of each county in the state, by name. That county was not named. Of the other executions issued at the same term, part were like this, and part contained the name of 'Aroostook' in the printed directions. Aaron Haynes, to whom Pilsbury's execution was delivered to be executed by him, as an officer of Aroostook county, and by whom the return thereon was made as such, was at the time of the levy, a deputy of each of the sheriffs of Penobscot and Aroostook. At the June term, 1842, of the supreme judicial court, sitting in and for Penobscot county, a motion was filed by Pilsbury for leave to amend his execution, by inserting the name of Aroostook in the direction to the sheriffs, and the full bench, after hearing arguments in the matter, refused to grant the leave prayed for. Office copies of said deeds, and of said executions, and of the levies made under them, so far as they concerned the demanded premises, and of the records of the supreme judicial court, so far as they relate to said motion and the decision thereon, are annexed and made parts of the case. All amendments or applications therefor are to be considered by the court, as if the case were on trial before a jury. The whole case is submitted to the court, who are to direct judgment for demandant or tenant, as the facts and law shall warrant."

Mr. Rowe, for demandant.
Fessenden & Deblois, for tenant.

The argument of Rowe was as follows:
It is admitted that the plaintiff is entitled to judgment, unless the defendant has title; and the only question proposed to the court, is whether the levy on Pilsbury's execution, under which the defendant claims, passed the title, having been made by a deputy of the sheriff of "Aroostook," to whom the writ was directed. Before considering that question, the attention of the court is asked to a few facts, which show, that the defendant's claim to superior equity is entirely unfounded. The

case is not between the execution creditors, but their grantees without knowledge. Were the creditors themselves the parties, it would be the same. It would be a struggle between two creditors for the property of their common debtor, each entitled to what a strict interpretation of the law would give him, neither to favor. Pilsbury, living at Bangor, the residence of Smyth, obtained knowledge of the debtor's insolvency, and caused an attachment of his real estate to be made, a little earlier than Cooper could, who resides at Pittston, seventy-five miles from Bangor. The advantage derived from this circumstance was lost by his negligence, or that of his attorney, in not having his execution properly directed, and not by any art or act of Cooper. Cooper's execution issued earlier than he intended, through the omission of his attorney, in Kennebec, to have the case continued, and he found himself compelled either to abandon his lien, or to levy, and trust to chance to defeat the prior attachment. It was a fair race for the property of a common debtor, which the law of attachment holds out as the reward of the winner.

Pilsbury's levy was a nullity, from want of power in the officer, who made it. The power to make such levy is derived from the statute of 1821, c. 60, § 27 (the statute then in force). That gives it only to "the officer to whom the execution is directed and delivered." The deputy of the sheriff of Aroostook did not come within the description. The act of March, 1839 (St. 1839, c. 395), constituting the county of Aroostook, contains no provision that can aid the defendant. On the contrary, a question might be raised, whether the attachment was not lost, by the removal of the subject matter of it beyond the precinct and control of the sheriff of Penobscot. Whether this be so, or not, there is no power given to the sheriff of Penobscot to perfect by levy the lien created by such attachment. And had there been, this levy would still be fatally defective. For the return shows, that the officer acted as deputy of the sheriff of Aroostook. And had he acted as sheriff of Penobscot, and could the land, by virtue of any statute provision, be considered as lying within his precinct, the extent would be void, through failure to notify the debtor, who resided in that county, to choose an appraiser.

The argument of Fessenden & Deblois was as follows:
For the tenant it is contended, that the levy of Pilsbury conveys the land in dispute, and that by Pilsbury's deed to defendant, he has the title as against every one, and particularly as against the plaintiff. Pilsbury perfected his lien, created by the prior attachment, by making a legal levy on the same, and took the estate by a statute purchase, notwithstanding the levy of Cooper.

In the first place, we think, that the court will not overlook the fact stated in the case, that Cooper knew of the priority of Pils-

bury's attachment. In this particular, there is a strong analogy to the recording of deeds, in relation to which courts hold notice of prior conveyances equivalent to a recording of such conveyances. The case provides, that "all amendments or applications therefor, are to be considered by the court, as if the case were on trial before a jury." This gives the court license to allow the defendant the advantage of such amendment, if it proves to be such an amendment as the court, from which the execution issued, had a right or ought to have granted. We, therefore, consider this court not only at liberty, but called upon to determine, whether the amendment should have been granted, as we now contend it should. The supreme judicial court have had a similar question before them, and settled the law, as we contend it should have been determined. Sawyer v. Baker, 3 Greenl. 29. If the clerk omit to affix the seal of the court to an execution, it may be amended, even after the execution has been extended on lands, and the extent recorded. Quite a large list of cases have been cited in this case, to which we beg leave to refer the court. Particularly, Campbell v. Stiles, 9 Mass. 217, where a writ of review was served by a sheriff to whom it was not directed, by inserting a direction to such sheriff. It was deemed a misprision of the clerk, and the writ was a judicial one. This we deem directly in point. The same principle is recognized in Burrell v. Burrell, 10 Mass. 222. This last case covers the whole ground. In Young v. Hosmer, 11 Mass. 89, the court held, that the insertion of a wrong Christian name in an execution was a misprision of the clerk, and as such should be amended. But without examining particularly all the citations in the case of Sawyer v. Baker, we beg leave to refer to all those cases as establishing the point, for which we contend in this case. The supreme judicial court of this state assumed the same power over a record in Crofton v. Ilsley, 6 Greenl. 48. See, also, Wright v. Wright, Id. 415; Seaman v. Drake, 1 Caines. 9; Close v. Gillespey, 3 Johns. 526; Atkins v. Sawyer, 1 Pick. 351; Ringgold v. Brown, 4 Har. & McH. 498. Where a judgment is entered, and execution issued without inserting costs in either, the court allowed the defect to be amended. O'Driscoll v. McBurney, 2 Nott. & McC. 58; Mechanics' Bank v. Minthorne, 19 Johns. 244; Peddle v. Hollinshead, 9 Serg. & R. 277; Sharff v. Com., 2 Bin. 514. The result of the examination of the authorities, above cited, the defendant contends, is, that the omission of the direction to the sheriff of Aroostook is a misprision of the clerk, and, as such, ought to have been amended, and of consequence, that the court here will secure to the plaintiff the benefit, as if it had been granted by the supreme judicial court. But we place our right to a decision in favor of our title on another point.

We contend, that, under the circumstances of this case, the levy by our deputy was good, although the precept was not formally directed to him, he having the authority by virtue of his office to make a levy on the premises in dispute. In Hearsey v. Bradbury, 9 Mass. 95, it was settled, that if a writ be served by an officer, which he would be authorized to serve, if it were directed to him, but which contains no such direction, the plaintiff may have leave to amend by inserting such direction. It would seem from this case, that the act of an officer, authorized to perform it, was in the view of the law effectually done, although the precept, under which he acted, was not directed to him. And why does it not follow in the case at the bar, that the officer, being authorized by law to do the acts he undertook to do, the acts themselves may be considered as done, although the precept by which they were done, was not directed to him, and this too in a case in which the plaintiff had the fullest notice of the extent of the claim of the defendant.

STORY, Circuit Justice. The sole question, which arises in this case, at least the sole question in controversy, is, whether the levy made upon Pilsbury's execution was good and valid. The execution was served by a deputy sheriff, who was a deputy of the sheriff of Penobscot county, and also of Aroostook county. The execution was directed to the sheriff of Penobscot county; but not to the sheriff of Aroostook county. The levy was actually made by the deputy, as a deputy of the sheriff of Aroostook county. There had been an attachment upon the land upon the original mesne process in the suit of Pilsbury, which was made by the proper officer of Penobscot county, the land then lying therein; but in 1839, the county of Aroostook was set off from Penobscot county, and included the land in controversy. After the levy of Pilsbury, an application was made to the supreme court of the state of Maine, at the June term thereof in Penobscot county, to allow the execution to be amended, by inserting Aroostook county in the direction of the execution, upon the ground, that it was accidentally omitted by the clerk of the court. The court refused to grant the application.

It is under these circumstances, that the case comes before this court for consideration, with an additional agreement by the parties, that "all amendments or applications therefor are to be considered by the court, as if the case were on trial before a jury." The object of this clause seems to have been to bring under review and re-examination the decision of the state court in denying the application for an amendment. But it strikes me, that this court has no jurisdiction to entertain such a question, as it would be, in effect, exercising an appellate jurisdiction over the decision of the state court, upon a process issuing from and un-

der the authority of the state, and over which the state court possesses, by law, a clear and exclusive jurisdiction. The authority of the supreme court of the state to grant or refuse amendments of process is a matter purely of local law, and of which that court is the sole judge. It is not for us to say, what that authority is, and when and how it ought to be exercised, whether it is a matter of sound discretion in the court, or of positive right in the party applying therefor. In either view, we can have no jurisdiction to re-examine, or collaterally to question the jurisdiction or decision of the court. If we were now to assume such an appellate authority, the supreme court of the state would have full authority to disregard our judgment, inasmuch as it could be, in no just sense, binding upon it, and would be assuming the final right to decide upon the true construction of a state statute and a state authority, exclusively dependent upon state legislation. It might have been, nay, it would have been, a very different question, if the execution had issued from this circuit court, and an application for an amendment, on account of misprision of the clerk in misdirecting it, had occurred. In such a case, we should have been at liberty to consider the case upon principle, and with reference to the authority, given to this court by the laws of the United States, to grant amendments.

It may be proper, however, to suggest, that most of the cases, if not all, cited at the bar, as to amending misprisions of the clerk in the issuing of process, are distinguishable from the present. In some of them, there was a clear mistake of the clerk in not issuing a judicial process, in conformity to the prior process and proceedings in the same cause, which was his positive duty. Such was the case of the writ of review in Burrell v. Burrell, 10 Mass. 221; and the omission to affix the seal of the court to an execution in Sawyer v. Baker, 3 Greenl. 29; and the omission to enter judgment against the estate of the intestate in the case of Atkins v. Sawyer, 1 Pick. 351. The same suggestion applies to the case of Campbell v. Stiles, 9 Mass. 217, which was the case of a writ of review, directed to the sheriff of Franklin county (Mass.,) and served by the sheriff of Hampden; and the court allowed the writ to be amended by directing it to the sheriff of Hampden. Upon that occasion the court said: "This is a judicial writ, and the erroneous direction was a mere misprision of our own clerk. Judicial writs are more absolutely under the control of the court than original writs." This case would have been directly in point, if the original writ in the present case had been directed to the sheriff of Aroostook county, and the clerk, in issuing the execution, had omitted that county. But can it be affirmed, that the omission of the clerk in the present case to insert Aroostook county, the county of Penobscot alone being in the original writ, was a departure or omission of his positive duty? Was he bound to take notice of the formation or boundaries of Aroostook county, or to extend the exigency of the execution to any other counties by name than those contained in the original writ, without some instruction from the plaintiff? It is quite possible, that some considerations of this nature may have entered as ingredients into the opinion of the state court on this point. It is not, however, immaterial to observe, that in all the above cited cases, the question arose merely between the original parties, without any rights of third persons having intervened. The case of Young v. Hosmer, 11 Mass. 89, admits of the same explanation, as does Crofton v. Ilsley, 6 Greenl. 48; and Mechanics' Bank v. Minthorne, 19 Johns. 244. The case of Hearsey v. Bradbury, 9 Mass. 95, is certainly of far more stringency. There, a writ was directed to the sheriff or his deputy; but the ad damnum being under seventy dollars, it might be served by a constable; and it was served by a constable. Upon the return of the writ, the direction was allowed to be amended by inserting a direction to a constable; and the court treated the amendment as a matter of form. But here, again, the question was solely between the original parties. The case of Close v. Gillespey, 3 Johns. 526, involved the rights of another judgment creditor, and, therefore, it stands upon a distinct ground. But there the error corrected was the omission of the attorney in the cause to put the defendant's name on the record to a plea in the case, it being the case of a warrant of attorney to confess judgment. This case, whatever may be its authority, stands upon a ground very different from the present, where the levy has been executed by an officer to whom it was not directed.

Thus much it seems proper to say upon the present occasion, by way of commentary upon some of the cases cited; although I wish distinctly to be understood as giving no opinion, what I should have done, sitting in the state court. But the court may be pressed by other considerations: First, that here Cooper, at the time of his own levy, had full knowledge of the attachment of Pilsbury, and is, therefore, to be postponed to the subsequent levy of Pilsbury, by analogy to a purchaser, taking a conveyance with a knowledge of a prior unrecorded conveyance; secondly, that as the deputy, who made the levy, was a deputy of the sheriff of the county of Penobscot, as well as of the county of Aroostook, the levy was good, because it might have been perfected by the sheriff of the county of Penobscot, where the original attachment was made, notwithstanding the land fell within the boundaries of the new county; thirdly, that, at all events, the deputy, who made the levy, being a deputy of the county of Aroostook, the levy was properly made by him, although, by mistake, the precept was not directed to him.

In respect to the first point, it is sufficient to say, that the rule as to a purchaser, claiming land with notice of a prior unrecorded conveyance, has never been applied to the case of two creditors, proceeding by suit in invitum with a knowledge of the attachments of each other. In the latter case, each is understood to stand upon the very rights which the law gives him, and is entitled, in a race of diligence, to get and hold any priority, which he lawfully may, however disadvantageous to the other attaching creditors, as each claims under the mere process of law. Besides; knowledge of an utterly void or defective title will not affect the right of the purchaser to maintain his own conveyance with all its original validity. It does not confirm or establish such void or defective title; but, at most, leaves it to avail as much as it may, in point of law and equity.

Then, as to the second point, I agree, that if the sheriff of Penobscot, or his deputy, had a right, virtute officii, because the original attachment was made on the land, while it was a part of the county of Penobscot, to execute the levy under the execution issuing on the judgment, notwithstanding the severance of the county, and the lands thereby falling within the county of Aroostook, then that the present levy may be supported, because the act of the deputy in the levy may be properly referred to the only authority by which it could be lawfully made, and not by the other, "ut res magis valeat quam pereat." But my difficulty is in admitting that the sheriff of Penobscot had authority to complete the levy after the severance of the county. No provision to such an effect exists in the statutes creating the new county; and, therefore, the point must be disposed of upon general principles. At the common law, if a sheriff seizes goods on execution, and goes out of office before the sale of the goods on the execution is completed, he may still proceed to sell the goods. So we find it laid down by Lord Holt in Clerk v. Withers, 2 Ld. Raym. 1072, 1074, and in 2 Saund. 47q., by Sergeant Williams, in his note.[2] The reason assigned is, that the same sheriff, that begins an execution, must end it. And, by the Revised Statutes of Maine (chapter 104, § 21), all sheriffs and their deputies may execute all precepts in their hands at the time of their removal from office. But I am not aware of any provision of law, by which, when an attachment is made by a sheriff in office, if the execution does not come until another sheriff is in office, the execution is to be served by the former, and not by the latter officer. But be this, as it may, upon general principles it would seem, that a sheriff is limited in his levies upon real estate to such estate, as is within his county; for his rights and duties are strictly local. Unless, then, some stat-

ute has extended his authority to cases of lands without his county, it would seem, that his having made a prior attachment thereof while within the limits of his county, would not aid him; for in such a case by operation of law the land is removed beyond his jurisdiction. Suppose the sheriff of Penobscot county, after the attachment, had been removed, and a new sheriff had been appointed, would the new sheriff have had a right to perfect a levy upon the land attached, after it was set off to Aroostook county? Or should it be by the sheriff of Aroostook county? The strong inclination of my mind is, that it should be by the latter.

The third point is that which was mainly relied on at the argument, and that is, that substantially the levy was well made, it being made by the proper officer, although the precept was not directed to him. And it is here, that the case of Hearsey v. Bradbury, 9 Mass. 95, is applied with great force. Assuming the authority of that case to be entirely satisfactory for the allowance of the amendment there made, by adding the direction of the precept to the officer who served it, the difficulty still remains, what is the effect where no such amendment has been allowed? Is not the act of the officer a mere nullity, if the precept is never addressed to him? If the state court in the present case had allowed the amendment, it would have been decisive in favor of the demandant. But the state court refused the amendment; and then the case stands upon the execution, as the service and levy by an officer, who was not authorized to serve it, because it was never addressed to him. Can such a service and levy, without authority, be maintainable upon any principles of law? The case of Means v. Osgood, 7 Greenl. 146, is very strong in point to show that the court, in allowing amendments on the returns of officers on levies of real estate, confine themselves to cases where the question is mainly between the original parties, and the rights or levies of third persons have not intervened. The distinction is a sound one, and stands upon grounds which cannot but commend it to the general approbation of the profession. That case also seems entirely decisive, that, unless the amendment is allowed, the levy, in a case like the present, must, à fortiori, be utterly void and unmaintainable.

Upon the whole, although I have examined the case with an anxious desire to see if Cooper's levy, considering the defect to be one wholly involuntary and by mistake, could be sustained, upon any principles of law, I confess myself unable to find any, on which to rest it, and therefore, I am of opinion that judgment ought, upon the statement of facts, to be entered for the tenant.

[2] See also, 2 Tidd, Prac. (9th Ed., 1828) p. 1021.